WALLACE K. AND BETTE J. SHROYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shroyer v. Commissioner
Docket No. 3814-78.
United States Tax Court
T.C. Memo 1981-327; 1981 Tax Ct. Memo LEXIS 417; 42 T.C.M. (CCH) 233; T.C.M. (RIA) 81327; June 24, 1981. Robert M. Tyle, for the petitioners. Edward D. Fickess, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *419 OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $ 32.35 and $ 1,036, respectively, in petitioners' 1975 and 1976 federal income taxes. The questions for our determination are whether petitioners are entitled under section 172 to a net operating loss carryforward deduction for 1975 and 1976 and, if so, the amounts thereof. Resolution of these issues turns upon: (1) The amount of the losses suffered to petitioner Wallace K. Shroyer's business propoerty in a flood in 1972 and (2) the amounts which petitioners are entitled to deduct for 1972 for advertising and business transportation expenses. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioners, husband and wife, filed their joint federal income tax returns for 1972, 1975 and 1976 with the Internal Revenue Service Center at Andover, Massachusetts. At the time they filed their petition herein, they resided at Corning, New York. Issue 1. Casualty Loss. Petitioner Wallace K. Shroyer [3] operated a gasoline service station as lessee at Painted Post, New York, which was devastated by the floods which followed in the *420 wake of Hurricane Agnes in June of 1972. The real property was owned by the Atlantic Richfield Oil Company. Two of petitioner's vehicles used in his business were destroyed and a third was damaged in the flood. Destroyed were: (1) A 1967 Ford Bronco, purchased by petitioner in 1971 for $ 4,300, with respect to which he claimed depreciation prior to 1972 in the amount of $ 501.69 and (2) a 1960 half-ton pickup truck, purchased by petitioner in 1970 for $ 500, as to which he claimed depreciation prior to 1972 in the amount of $ 208.32. A 1968 Universal Jeep, purchased by petitioner in 1971 for $ 2,600, as to which he claimed depreciation prior to 1972 in the amount of $ 259.98, was damaged. Petitioner repaired the Jeep over a period of time with an out-of-pocket expenditure of $ 500. Other machines and equipment used in petitioner's business, having an undepreciated basis of $ 3,431.82 in the aggregate, were also lost in the flood. Petitioner had no capital gains in 1972. *421 All of petitioner's inventory of gasoline, oil, tires, spark plugs, fan belts, muffler clamps, and other such automobile parts and equipment was washed away or destroyed by the flood. On his 1971 federal income tax return, petitioner correctly showed his ending inventory to have a cost of $ 37,506.18. He had gasoline in inventory as of the close of 1972 which cost him $ 3,500, but no other inventory. Petitioner received a disaster loan in the amount of $ 19,400 from the Small Business Administration (hereinafter referred to as the SBA) to aid in the refurbishing and restocking of his service station. Repayment of $ 5,000 of the loan was forgiven by the SBA. Petitioner was not otherwise compensated for his loss. Petitioners now concede the amount of the loss should be reduced by $ 5,000 by reason of the SBA loan forgiveness. Issue 2. Advertising and Business Transportation Expenses. Petitioner claimed a $ 6,500 deduction for advertising on the schedule of profit (or loss) from his service station business (Schedule C) attached to his 1972 federal income tax return. This expense derives largely from petitioner's estimate of his purchases of "S & H Green Stamps" for distribution *422 to customers who purchased gasoline. Records of his purchases of "S & H Green Stamps" for the period prior to the flood were lost in the flood. No record of his purchases for the period after the flood was produced at trial. His purchases of "S & H Green Stamps" were reported on his 1971 return as being $ 3,718.12 for that year. For part of 1972, petitioner awarded customers double the amount of stamps which he had given in 1971 with each purchase of gasoline, but his total sales reported for 1972 were approximately 9 percent less than reported for 1971. Petitioner expended $ 4,000 for "S & H Green Stamps" in 1972. He also expended a total of $ 450 for advertising in the yellow pages of the telephone directory and other media in 1972. Petitioner used his vehicles -- a Jeep, a Ford Bronco, a 3/4 ton pickup truck, and a 1/2 ton pickup truck -- to make business service calls, to pick up parts for his business, for his personal and business errands, and for commuting between his home and service station. On his Schedule C for 1972, petitioner claimed a deduction in the amount of $ 1,705.44 for local business transportation on the basis of the standard mileage rate of 12 cents a *423 mile for 14,212 miles which his various vehicles were driven. Respondent determined that no deduction was allowable on this method. Petitioner reported a loss from the operation of his service station business on Schedule C for 1972 in the amount of $ 48,729.82. Respondent determined that that loss was allowable only to the extent of $ 20,660.50. At the trial and on brief, respondent limited the matters at issue to the amounts of the losses of business property due to the flood and the amounts of advertising and transportation expenses claimed by petitioner. OPINION Issue 1. Casualty Loss. Section 165 allos a deduction to individuals for losses not compensated for by insurance or otherwise suffered upon the damage to or destruction of business property by reason of fire, storm, shipwreck or other casualty or from theft. See sec. 165(a); sec. 1.165-7(a)(1), Income Tax Regs. Physical damage to property caused by a flood is clearly a casualty within the purview of section 165, and respondent concedes that petitioners suffered some such damage. Petitioners now concede that the amount of the loss should be reduced by $ 5,000, the amount of the SBA loan forgiveness. *424 The only dispute, then, is the amount of the loss to petitioners' business property. The burden of proof rests with petitioners. Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977); Axelrod v. Commissioner, 56 T.C. 248, 256 (1971). The proper measure of the loss sustained is generally the difference between the fair market value of the property immediately before the casualty and its fair market value immediately thereafter, but not to exceed its adjusted basis. See Helvering v. Owens, 305 U.S. 468 (1939); Millsap v. Commissioner, 46 T.C. 751, 759 (1966), affd. 387 F.2d 420 (8th Cir. 1968); sec. 1.165-7(b)(1), Income Tax Regs. However, if property used in a trade or business or held for the production of income is totally destroyed by casualty, and the fair market value of such property immediately before the casualty is less than the adjusted basis of such property, the amount of the adjusted basis of such property shall be treated as the amount of the loss for purposes of section 165(a). Sec. 1.165-7(b)(1), Income Tax Regs. Thus, it is clear that petitioner is entitled to a loss deduction in the *425 amount of $ 3,798.31 in respect of his 1967 Ford Bronco, $ 291.68 in respect of his 1960 half-ton pickup truck, and $ 3,431.82 for his other machines and equipment totally destroyed in the flood (the adjusted basis of those items in his hands), an aggregate amount of $ 7,521.81. Respondent does not contest that the losses here are not to be considered as losses from sales or exchanges of capital assets; i.e., they are properly treated as ordinary losses. See sec. 1231(a); sec. 1.1231-1, Income Tax Regs.
With regard to the Jeep, which was not totally destroyed in the flood, section 165 provides an exception to the rule that taxpayers may not claim a loss deduction for mere damage to an asset which they continue to use in their trade or business. Section 1.165-7(a)(1), Income Tax Regs., provides: SEC. 1.165-7. Casualty losses. (a) In general -- (1) Allowance of deduction. * * * any loss arising from fire, storm, shipwreck, or other casualty is allowable as a deduction under section 165(a) for the taxable year in which the loss is sustained. * * * The manner of determining the amount of a casualty loss allowable as a deduction in computing taxable income under section *426 63 is the same whether the loss has been incurred in a trade or business or in any transaction entered into for profit, or whether it has been a loss of property not connected with a trade or business and not incurred in any transaction entered into for profit. The amount of a casualty loss shall be determined in accordance with paragraph (b) of this section. * * * It follows that the amount of the loss to the Jeep would ordinarily be measured by the decrease in its fair market value as the result of the flood. Here, however, there was no evidence offered as to its fair market value before the flood and only a conclusory statement in petitioner's testimony that it was valueless immediately after the flood. Section 1.165-7(a)(2)(ii), Income Tax Regs., provides, nevertheless, that the cost of repairs to the damaged proiperty is acceptable as evidence of the loss of value if: (1) the repairs are necessary to restore the property to its condition immediately before the casualty, (2) the amount spent for such repairs is not excessive, (3) the repairs do not care for more than the damage suffered, and (4) the value of the property after the repairs does not as a result of the repairs *427 exceed its value immediately before the casualty. Lamphere v. Commissioner, 70 T.C. 391 (1978); Chichester v. United States, 185 Ct. Cl. 591 (1968). We believe that those criteria are met here, and, accordingly, $ 500 (the cost to repair it) is to be allowed as a deduction in respect of the damage caused to the Jeep by the flood. See Lamphere v. Commissioner, supra.
Losses to inventory are not subject to section 165. They are properly treated under the provisions of section 471 and the regulations promulgated thereunder, dealing with the treatment of inventories in general. Sec. 1.165-7(a)(4), Income Tax Regs. In this respect, petitioner appears properly to have reported his opening inventory for 1972, but failed to include gasoline which cost $ 3,500 in his closing inventory for the year. See sec. 1.471-1, Income Tax Regs. This adjustment and the concommitant adjustment to petitioner's cost of goods sold in 1972 must be made. Respondent takes issue with petitioner's statement of his opening and closing inventories for 1972 and on brief suggests a myriad of suspicions concerning their accuracy. We found petitioner to be *428 a candid, forthright, and honest witness, however, and we are not inclined to discount his highly credible testimony by reason of such suggestions made for the first time on brief. Issue 2. Advertising and Transportation Expenses. Section 162 provides for a deduction for all ordinary and necessary expenses paid or incurred by a taxpayer during the taxable year in carrying on a trade or business. Ordinary and necessary expenditures for business advertising and transportation are, thus, deductible. The issue regarding advertising expenses is purely a factual one as to their amount. Petitioner testified at length at the trial concerning his purchases of "S & H Green Stamps" and gave some testimony as to other advertising expenses. The failure to produce his records of advertising expenses for the period prior to the flood in 1972 is understandable. They were all lost in the flood. Still, his failure to attempt to reconstruct them more accurately and to obtain verification of them from others is hard to understand. His failure to produce records for the period after the flood is more difficult to comprehend. Nevertheless, we are satisfied that petitioner made such purchases *429 and incurred other advertising expenses in 1972, and we are, accordingly, required to make an estimate of the amount. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). In so doing, we bear heavily on petitioner, whose inexactitude is largely of his own making. Keeping in mind that petitioner did give double stamps in 1972, we have, thus, found as a fact that petitioner expended $ 4,000 for "S & H Green Stamps" and $ 450 for other advertising, and we hold that he is entitled to an advertising expense for 1972 in the amount of $ 4,450. As regards the transportation expenses, it appears that petitioner used his vehicles in part for personal purposes, which, of course, does not give rise to an allowable deduction. Sec. 262. Beyond that, however, is the problem created by petitioner's use of the standard mileage rate of Rev. Proc. 70-25, 1970-2 C.B. 506, to determine the amount of his deduction for transportation. If petitioner had used one automobile or one pickup truck in his business, his deductible transportation expenses could be computed under Rev. Proc. 70-25. However, he operated four vehicles in connection with his service station *430 business. Therefore, petitioner is not entitled to use the standard mileage rate provided in Rev. Proc. 70-25 for computing his vehicle expenses and may be allowed a deduction for expenses incurred in the operation of those four vehicles only for specific expenditures which he is able to substantiate. West v. Commissioner, 63 T.C. 252 (1974); see Carr v. Commissioner, T.C. Memo. 1979-400, affd. without opinion 631 F.2d 730, rehearing denied 633 F.2d 582 (5th Cir. 1980). There is no evidence here of those actual expenditures. Indeed, it appears to us that gasoline, oil, tires, parts, insurance and depreciation for these vehicles were claimed elsewhere on the business schedule. Accordingly, we sustain respondent's determinations in this regard. In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Inasmuch as Bette J. Shroyer is a party to this proceeding solely because she filed a joint return with her husband, for convenience we will hereinafter refer to Wallace K. Shroyer as the petitioner.↩