**Sammy R. and Pamela Kay DILLON, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 89–4581.

United States Court of Appeals, Fifth Circuit.

June 5, 1990.

Sam Dillon, Timpson, Tex., pro se,

Gary R. Allen, Debroah Swann, Ann B. Durney, Chief Appellate Sec., William Rose, Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Peter K. Scott, Acting Chief Counsel, IRS, Washington D.C., for C.I.R.

Before GOLDBERG, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

*Statement of Facts*

In 1982 and 1983, Sam Dillon contracted with the Houston Chronicle (the Chronicle) to deliver newspapers to residences and businesses and to stock vending machines on two routes. Pamela Dillon, his wife, delivered the newspapers on one route while Mr. Dillon delivered them on the other. Ms. Dillon did not contract with the Chronicle.

The Chronicle required Mr. Dillon to use and insure vehicles meeting certain specifications, and to pick up and distribute newspapers at certain times and places. The Chronicle also required Mr. Dillon to maintain all required licenses, find drivers to service his routes on his days off, and provide workers' compensation insurance for those drivers. The contracts between Mr. Dillon and the Chronicle described Mr. Dillon as an independent contractor. The Chronicle paid Mr. Dillon a fixed fee each month. Mr. Dillon also collected and retained payments from some of the customers on his route. The Chronicle did not pay Ms. Dillon. However, she collected and retained payments from some of the customers on her route.

On their 1983 federal income tax return, the Dillons claimed numerous personal and business deductions, including business vehicle expenses totaling $11,676.39. Despite Mr. Dillon's apparent status as an independent contractor, he did not pay the self-employment tax that independent contractors must pay.

In 1986, the Internal Revenue Service (I.R.S.) audited the Dillons' 1983 income tax return. During the audit, the Dillons conceded certain deductions. The I.R.S. conceded other deductions but refused the Dillons' request to estimate business vehicle expenses rather than to deduct the actual expenses that they previously claimed. However, the I.R.S. allowed actual business vehicle expenses. The I.R.S. also concluded that Mr. Dillon worked as an independent contractor for the Chronicle. Therefore, the I.R.S. assessed Mr. Dillon the self-employment tax. The I.R.S. also

assessed additional taxes because the Dillons underpaid the total income tax actually due. Finally, the I.R.S. assessed negligence penalties for the Dillons' failure to document adequately their claimed deductions.

The Dillons challenged the I.R.S.'s decision in tax court. The tax court found that (1) the Dillons underpaid income tax; (2) Mr. Dillon was an independent contractor and therefore owed the self-employment tax; (3) the Dillons could not estimate business vehicle expenses; and (4) the Dillons failed to document their deductions and therefore owed the negligence penalty.[1] The Dillons appealed and requested that we stay collection of their taxes pending appeal. We granted the stay and now consider the Dillons' appeal.

### Standard of Review

We will reverse the tax court's factual findings only if the tax court clearly erred. *Sandvall v. I.R.S.*, 898 F.2d 455, 458 (5th Cir.1990); *Masat v. I.R.S.*, 784 F.2d 573, 575 (5th Cir.1986). We review the tax court's legal decisions *de novo*. *San Antonio Savings Ass'n v. I.R.S.*, 887 F.2d 577, 581 (5th Cir.1989). The Dillons must establish their deductions. *See Sandvall*, 898 F.2d at 457–458.

### Discussion

#### Employee/Independent Contractor

■ Self-employed taxpayers must pay the self-employment tax. 26 U.S.C. Section 1401(a) and (b).[2] Taxpayers earning income as employees need not pay the self-employment tax. *Id.* The common-law determines whether a taxpayer is self-employed (an independent contractor for this discussion) or an employee. Section 3121(d)(2). Tax regulations accurately capture the common law definitions of both an employee and independent contractor:

Generally [an employment] relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business or profession, in which they offer their services to the public, are independent contractors and not employees.

26 C.F.R. Section 31.3121(d)–1(c)(2); *see also Newcomb v. North East Ins. Co.*, 721 F.2d 1016, 1017 (5th Cir.1983).

The Tax Code specifically states that newspaper carriers are not employees. Section 1402(c)(2)(A); Section 3121(b)(14)(B). Tax regulations explain:

Services performed by an employee in, at the time of, the sale of newspapers or magazines to ultimate consumers under an arrangement under which the newspapers or magazines are to be sold by him

---

1. The tax court also decided several other issues that the Dillons do not appeal.

2. "Section" refers to sections in the Internal Revenue Code, 26 U.S.C. Section 1 *et seq* ("Tax Code") unless indicated otherwise.

at a fixed price, his compensation being based on the retention of the excess of such price over the amount at which the newspapers or magazines are charged to him, are excepted from employment. The services are excepted whether or not the employee is guaranteed a minimum amount of compensation for such services, or is entitled to be credited with the unsold newspapers or magazines turned back. Moreover, the services are excepted without regard to the age of the employee. Services performed other than at the time of sale to the ultimate consumer are not within the exception. Thus, the services of a regional distributor which are antecedent to but not immediately part of the sale to the ultimate consumer are not within the exception. However, incidental services by the employee who makes the sale to the ultimate consumer, such as services in assembling newspapers or in taking newspapers or magazines to the place of sale, are considered to be within the exception.

26 C.F.R. Section 31.3121(b)(14)–1(b).

The I.R.S. labeled Mr. Dillon an independent contractor and therefore assessed the self-employment tax. The tax court also labeled Mr. Dillon an independent contractor because (1) the contracts between Mr. Dillon and the Chronicle referred to Mr. Dillon as an independent contractor; and (2) the Chronicle controlled only vehicle, insurance, and business license requirements. Therefore, the tax court held that the I.R.S. properly assessed Mr. Dillon the self-employment tax.

Mr. Dillon argues that the Chronicle employed him. He points out that (1) the Chronicle required him to pick up and deliver newspapers at certain times and places; (2) he performed "personal services" by delivering newspapers; and (3) title to the newspapers never vested in him. Mr. Dillon also argues that the statutory exception to the definition of employee for newspaper carriers excludes him because he did not sell newspapers to the "ultimate consumer." Instead, he supplied newspapers to vending machines and stores.

The tax court did not clearly err in its findings of facts. The Chronicle only minimally controlled how Mr. Dillon conducted his business. The Chronicle controlled end results (e.g., delivery at certain times and places) while Mr. Dillon controlled the method (e.g., who worked with or for him and his days off). Even if we add Mr. Dillons' asserted facts to the tax court's factual findings, we still agree with the tax court's legal conclusion that Mr. Dillon worked as an independent contractor rather than as a Chronicle employee. Therefore, we need not decide whether the statutory exception to the definition of employee for newspaper distributors excludes him. The tax court correctly held that the I.R.S. properly assessed Mr. Dillon the self-employment tax.

### Business Vehicle Expense Deduction

■ Taxpayers may deduct "ordinary and necessary expenses paid or incurred" in operating a business, including the cost of driving a vehicle. *See* Section 162. Taxpayers must substantiate their deductions, including business vehicle expenses. *See* Section 6001. To substantiate business vehicle expenses, taxpayers using just one vehicle must allocate expenses such as gasoline and repairs between personal and business use. *West v. I.R.S.*, 63 T.C. 252 (1974). To ease the record-keeping burden allocation imposes, the I.R.S. permits taxpayers who use only one vehicle at a time for business to estimate their business expenses. Rev.Proc. 70–25, 1970–2 C.B. 506, modified by Rev.Proc. 86–61, 1982–2 C.B. 849. Taxpayers who use vehicles for hire (such as taxicabs) or use two or more vehicles simultaneously for business may not estimate expenses. *West*, 63 T.C. 252. Eligible taxpayers estimating expenses deduct the total resulting from multiplying their business mileage times a specified rate per mile.

■ At the audit, the Dillons argued that they may estimate business vehicle expenses because each operated a separate business and used one vehicle at a time for that business. The I.R.S. found that the Dillons used two vehicles simultaneously to

operate one business. Therefore, the I.R.S. refused to allow the Dillons to estimate their business vehicle expenses. It did allow them to deduct their actual business vehicle expenses.

The tax court found that Ms. Dillon did not (1) contract separately with the Chronicle; (2) receive payments directly from the Chronicle; or (3) account separately for her business vehicle expenses on the Dillons' tax return. The tax court then applied *West*, 63 T.C. 252, to these facts. In *West*, the taxpayer delivered newspapers on two routes and used a different truck for each route. She used only one truck at a time on each route and recorded deliveries separately for each route. However, she recorded the expenses for both trucks together (apparently because her mechanic billed her for both trucks together). The *West* court concluded that West's "use of the trucks was sufficiently integrated to constitute a single operation." Because it found *West* indistinguishable, the tax court concluded that the Dillons operated one business and used more than one vehicle for business at a time. Therefore, the tax court held that the Dillons could not estimate their business vehicle expenses.

The tax court did not clearly err when it found that the Dillons used two vehicles simultaneously while operating just one business. The Dillons proved that each operated only one vehicle at a time but did not prove that each operated a separate business. Without this proof, the Dillons may not estimate vehicle expenses. Instead, they may deduct actual vehicle expenses. However, had the Dillons established that each operated a separate business and used one vehicle for that business at a time, each could estimate business vehicle expenses.

### Negligence Penalty

The I.R.S. may penalize taxpayers for any underpayment due to negligence or disregard of rules or regulations. Section 6653(a). "Negligence" includes the failure to act reasonably under the circumstances. *Sandvall*, 898 F.2d at 458; *Marcello v. I.R.S.*, 380 F.2d 499, 506 (5th Cir.1967);

Section 6653(a)(3). "Disregard" includes careless, reckless, or intentional disregard. Section 6653(a)(3). Failure to document deductions constitutes negligence. *Marcello v. I.R.S.*, 43 T.C. 168 (1964). The tax system presumes that taxpayers deal truthfully with the I.R.S. Therefore, we will not presume that the Dillons claimed improper deductions even though they must substantiate those deductions.

The I.R.S. penalized the Dillons for failing to document adequately their numerous personal and business deductions. The tax court upheld the penalty because the Dillons "produced no evidence of any books and records substantiating their claimed deductions for travel and entertainment, rent, wages, miscellaneous deduction for repairs, tools, and dues, and the farm loss." *Dillon v. I.R.S.*, Nos. 35445–85 and 44952–86, T.C.Memo. 1989–14, slip op. at 10 (1989).

The Dillons argue that they substantiated their deductions during the audit. In the record on appeal, the Dillons included copies of checks documenting travel and entertainment, rent, gasoline, advertisement, and miscellaneous expenses, bank service charges, business dues and charitable contributions paid, and refunds paid to customers. They also included receipts for some but not all of these expenses.

These checks and receipts document adequately the Dillons' claimed deductions. *See, e.g., McCaskill v. I.R.S.*, 77 T.C. 689 (1981); *Robinson v. I.R.S.*, 51 T.C. 520 (1968). As the tax court previously noted: "Section 6653(a) requires that some part of an underpayment result from taxpayer's negligence or intentional disregard for rules and regulations and does not allow a sweeping and arbitrary assertion of the addition ... solely for inadequate bookkeeping." *Harrison v. I.R.S.*, 62 T.C. 524, 535 (1974). While the Dillons could have maintained better records, their "inadequate bookkeeping" does not merit the I.R.S.'s decision to assess the negligence penalty. Therefore, the tax court erred by affirming this decision.

*Conclusion*

We carefully reviewed the Dillons' other claims of error and the I.R.S.'s jurisdictional arguments. They lack merit. Therefore, we AFFIRM the tax court's decision finding Mr. Dillon liable for the self-employment tax and denying the Dillons's request to estimate business vehicle expenses. We REVERSE the tax court's decision upholding the negligence penalty and VACATE the stay of collection of taxes pending appeal.